IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CHRISTAL SCHANES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:26CV28 |
| UNIVERSITY OF | ) | |
| NORTH CAROLINA | ) | |
| SCHOOL OF THE ARTS, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court on Defendant University of North Carolina School of the Arts's ("UNCSA" or "Defendant") Motion to Dismiss [Doc. #11] the Amended Complaint [Doc. #10] filed by Plaintiff Christal Schanes ("Plaintiff"), alleging UNCSA violated her rights under the Family Medical Leave Act ("FMLA"). Plaintiff brings interference and retaliation claims under the FMLA, as well as state law claims under North Carolina law for wrongful discharge in violation of public policy, breach of contract, and negligent infliction of emotional distress. UNCSA bases its Motion to Dismiss on Federal Rules of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction), 12(b)(2) (lack of personal jurisdiction), 12(b)(4) (insufficient process), 12(b)(5) (insufficient service of process), and 12(b)(6) (failure to state a claim upon which relief may be granted).

For the reasons set out below, the Court recommends that UNCSA's Motion to Dismiss the Amended Complaint be granted as to Plaintiff's FMLA claims for failure to state a claim upon which relief may be granted. Consequently, the Court also recommends that this case be remanded back to state court for further consideration of Plaintiff's state law claims.

## I. FACTS, CLAIMS, AND PROCEDURAL HISTORY

In 2013, UNCSA employed Plaintiff as a "Part-Time Visting Faculty" member in UNCSA's School of Design and Production. (Amend. Compl. ¶ 23.) Plaintiff and UNCSA then entered into a five-year employment agreement in August 2014, which lasted until "Day of Commencement, 2019." (Amend. Compl. ¶ 24; Amend. Compl. Ex. 1, 2014 Empl. Agree. [Doc. #10 at 13–14].) Following the expiration of the initial five-year employment agreement, Plaintiff and UNCSA agreed on a ten-year employment arrangement in April 2019. (Amend. Compl. ¶ 25; Amend. Compl. Ex. 2, 2019 Empl. Agree. [Doc. #10 at 16–17].) That agreement was slated to last until the "day of Commencement 2029." (Id.)

In August 2023, however, Plaintiff began experiencing health problems. (Amend. Compl. ¶¶ 32–36.) Plaintiff contends her health problems began after UNCSA provided her "an office that functioned as a chemical storage room, which contained" various chemical agents that were, according to Plaintiff, "stored improperly on open shelving in violation of OSHA requirements."[1] (Amend. Compl. ¶¶ 30, 31.) Plaintiff claims that she requested that the chemicals be removed from her workspace before the onset of health issues, but UNCSA took no action. (Amend. Compl. ¶ 40.) Plaintiff was "written out of work" beginning in

[1] Plaintiff also alleges an incident where she "injured her right wrist attempting to move books out of her office when they fell." (Amend. Compl. ¶ 41.) Plaintiff attributes her "prolonged exposure" to the chemical agents in her office as having contributed to her wrist injury. (Amend. Compl. ¶ 36.)

August 2023, after meeting with several physicians concerning her health. (Amend. Compl. ¶¶ 42–43.)

Thereafter, Plaintiff requested—and UNCSA approved—12 weeks of FMLA leave. (Amend. Compl. ¶ 44.) While on leave, Plaintiff requested several accommodations to facilitate her return to work. (Amend. Compl. ¶ 45.) Specifically, Plaintiff requested: "[r]elocation to a safe, chemical free-workspace; [t]emporary limitation of lifting and gripping tasks due to the work injury; and[] [t]emporary adjustments to course load and administrative demands consistent with medical restrictions." (Amend. Compl. ¶ 46(a)–(c).) UNCSA did not approve Plaintiff's requests. (Amend. Compl. ¶ 47.) Plaintiff also requested a leave extension, noting "the need for costly diagnostic testing and potential surgery as recommended by her treating physicians." (Amend. Compl. ¶ 60.) That request was also denied. (Amend. Compl. ¶ 60.) Without her requested accommodations, "Plaintiff understood she would not be able to return to work following the conclusion of her FMLA leave." (Amend. Compl. ¶ 48.) Plaintiff attributes UNCSA's failure to accommodate her requests as leaving her "with no viable option but to separate from her employment." (Amend. Compl. ¶ 49.)

After her resignation, Plaintiff filed a complaint in Forsyth County Superior Court against UNCSA, alleging: (1) violations under the FMLA; (2) wrongful discharge in violation of public policy; and (3) breach of contract. (Compl. [Doc. #4] at 3–6.) Defendant then removed the action to this Court. (Notice of Removal [Doc. #1].) Shortly thereafter, UNCSA filed a Motion to Dismiss [Doc. #6]. Plaintiff then filed an Amended Complaint, supplementing her previous factual allegations and adding a negligent infliction of emotional distress claim under North Carolina law. (Amend. Compl. ¶¶ 85–93.) In light of the Amended

Complaint, the Court entered a Text Order terminating UNCSA's original Motion to Dismiss as moot in light of the filing of the Amended Complaint, and allowing time for UNCSA to respond to the Amended Complaint. (Text Order Feb. 17, 2026.) Shortly thereafter, UNCSA filed the present renewed Motion to Dismiss as to Plaintiff's Amended Complaint. Plaintiff responded in opposition to UNCSA's Motion to Dismiss, and UNCSA replied.

II. DISCUSSION

A. Improper Process & Service of Process

UNCSA moves to dismiss the Amended Complaint first for lack of personal jurisdiction based on deficient process and insufficient service of process under Rule 12(b)(4) and (b)(5). In support of the Motion to Dismiss, UNCSA contends that Plaintiff failed to properly serve UNCSA's designated process agent, prior to removal. In response, Plaintiff maintains that service was properly effected after removal under 28 U.S.C. § 1448 and Federal Rule of Civil Procedure 4(m). Plaintiff also notes that UNCSA had notice of the Complaint, and that even accepting UNCSA's contentions, dismissal of the Amended Complaint is not warranted because UNCSA has not shown that Plaintiff's procedural deficiencies prejudiced UNCSA. (Pl.'s Resp. [Doc. #13] at 6–9.)

Under Rules 12(b)(4) and 12(b)(5), a defendant may seek dismissal for insufficient process and insufficient service of process, respectively. Fed. R. Civ. P. 12(b)(4), (5).

> A motion to dismiss under Rule 12(b)(4) challenges the sufficiency or 'form' of the process itself, and a motion to dismiss under Rule 12(b)(5) challenges the sufficiency of the act of 'service' of process. Stated differently, a Rule 12(b)(4) motion to dismiss objects to a defect in the content of the documents served, while a Rule 12(b)(5) motion to dismiss objects to a defect in the act (or lack) of delivery. For example, a typical Rule 12(b)(4) challenge alleges that the entity named in the summons is different from the entity named in the complaint. A typical rule 12(b)(5) challenge alleges that the process was delivered by a person

> incapable of serving process (e.g., a party), to a person or entity incapable of receiving service (e.g., a minor), or that the service was delivered in an improper way (e.g., via first-class mail).

Graham v. Anderson, No. 5:23-CV-30, 2023 WL 3910250, at *3 (E.D.N.C. June 8, 2023) (internal citations omitted). When a defendant moves to dismiss under Rule 12(b)(4) or 12(b)(5), the plaintiff bears the burden of establishing that process was sufficient and that service of process was valid. Elkins v. Broome, 213 F.R.D. 273, 275 (M.D.N.C. 2003).

Relatedly, under Rule 12(b)(2), a defendant may seek dismissal of a complaint because the court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). "Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." Koehler v. Dodwell, 152 F.3d 304, 306 (4th Cir. 1998); Chrisp v. Univ. of N.C.-Chapel Hill, 471 F. Supp. 3d 713, 716 (M.D.N.C. 2010).

In support of the Motion to Dismiss, Defendant engages in an extended discussion of whether service was proper in state court prior to removal. However, "[w]hen a case is removed to federal court, a plaintiff may be afforded additional time to complete service or to obtain issuance of new process if, prior to the case's removal, 'service of process has not been perfected prior to removal,' or 'process served proves to be defective.'" Rice v. Alpha Sec., Inc., 556 F. App'x 257, 260 (4th Cir. 2014) (per curiam) (quoting 28 U.S.C. § 1448). Specifically, 28 U.S.C. § 1448 provides that:

> [i]n all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.

Thus, 28 U.S.C. § 1448 affords a plaintiff the opportunity to cure insufficient state service of process post-removal under the Federal Rules.

This reading of § 1448 comports with the strong policy underlying the Federal Rules of reaching the merits of an issue rather than dismissing a case on pre-removal, procedural technicalities that could have been addressed in state court. See Foman v. Davis, 371 U.S. 178, 181–82 (1962); see also Baumeister v. N.M. Comm'n for the Blind, 409 F. Supp. 2d 1351, 1354 (D.N.M. 2006) ("If [Defendant] had a valid argument for dismissal based on insufficient state service, [it] could have moved the state court for relief. Instead, [Defendant] chose to exercise [its] right to remove the case to the federal system; with that, [Defendant] must accept both the advantages and disadvantages that removal brings."). It follows that once UNCSA removed this case, Plaintiff had "a chance to overcome her invalid service of process under North Carolina law by properly serving [it] under the federal rules." Richards v. PHH Mortg. Corp., No. 1:19CV759, 2020 WL 1234634, at *5 (M.D.N.C. Mar. 13, 2020) (quoting Jones v. SSC Durham Operating Co., No. 1:17CV686, 2019 WL 290036, at *3 (M.D.N.C. Jan. 22, 2019)); see also Brazell v. Green, No. 94-7214, 1995 WL 572890, at *1 (4th Cir. Sep. 29, 1995) (holding that "instead of dismissing his action, the district court should have allowed [the plaintiff] an opportunity to re-serve the defendants in accordance with the Federal Rules of Civil Procedure" after the plaintiff failed to properly serve the defendants under state law (citing 28 U.S.C. § 1448 and Freight Terminals, Inc. v. Ryder Sys., Inc., 461 F.2d 1046, 1052 (5th Cir. 1972))).

Under the Federal Rules of Civil Procedure, Plaintiff had 90 days from the date of removal to properly serve UNCSA with process. Fed. R. Civ. P. 4(m); see also Randolph v.

Hendry, 50 F. Supp. 2d 572, 579–80 (S.D.W. Va. 1999). Moreover, "under Rule 4(m), a district court possesses discretion to grant the plaintiff an extension of time to serve a defendant with the complaint and summons even absent a showing of good cause by the plaintiff for failing to serve the defendant during the 90-day period provided by the Rule. And if the plaintiff is able to show good cause for the failure, then the court *must* grant the extension." Gelin v. Shuman, 35 F.4th 212, 220 (4th Cir. 2022) (emphasis in original).

UNCSA removed this case on January 12, 2026, which provided Plaintiff with an opportunity to properly serve UNCSA under Rule 4 of the Federal Rules of Civil Procedure, irrespective of Plaintiff's procedural deficiencies before removal. Plaintiff's federal summons was issued to UNCSA's designated process agent, the Vice Chancellor of Institutional Integrity & General Counsel, on January 27, 2026, and Plaintiff's process server timely effected service that same day. (Summons [Doc. #8] at 1; Aff. of Serv. [Doc. #9] at 1–2.) Therefore, Plaintiff's service of process upon UNCSA was timely and proper under 28 U.S.C. § 1448 and the Federal Rules of Civil Procedure.[2] Thus, UNCSA's Motion to Dismiss for lack of personal jurisdiction based on deficient process and insufficient service of process under Rule 12(b)(2), (b)(4), and (b)(5) should be denied.

B. Failure to State a Claim Under the FMLA

UNCSA next contends that the FMLA claims should be dismissed under Federal Rule of Civil Procedural 12(b)(6) for failure to state a claim upon which relief may be granted. "To

---

[2] Moreover, to the extent necessary, the Court in its discretion would set a time for service under Rule 4(m), rendering the service timely. Finally, the Court notes that UNCSA does not contend that it was prejudiced by Plaintiff's procedural deficiencies prior to removal, and UNCSA has since been properly served under Rule 4(m). Therefore, the Amended Complaint should be analyzed on the substance of the claims alleged, not dismissed entirely on a (now cured) pre-removal, procedural deficiency.

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard does not require "detailed factual allegations," but it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. A claim is facially plausible when the plaintiff provides enough factual content to enable the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. "'The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. In this way, Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[ ] the[ ] claims across the line from conceivable to plausible." Twombly, 500 U.S. at 555, 570; see Iqbal, 556 U.S. at 680. The Court must accept as true all factual allegations contained in a complaint, but is not bound to accept legal conclusions. Iqbal, 556 U.S. at 678. Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

"The FMLA creates two interrelated, substantive employee rights: first, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to . . . [her] job after using protected leave." Mussat-Whitlow v. Winston-Salem State Univ., No. 1:25-cv-00263, 2026 WL 674180, at *5 (M.D.N.C. Mar. 10, 2026) (alteration in original) (quoting Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1122 (9th Cir. 2001)); see 29 U.S.C. §§ 2612(a), 2614(a). To enforce these rights, "the FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied

or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." Id. (quoting Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1206 (11th Cir. 2001)).

1. FMLA Interference Claim

First, Plaintiff brings an FMLA interference claim against UNCSA. Plaintiff alleges in her Amended Complaint that UNCSA "interfered with Plaintiff's benefits and protections provided under the FMLA by subjecting her to discrimination" under the FMLA. (Amend. Compl. ¶ 61.) Specifically, it is alleged that UNCSA interfered with Plaintiff's FMLA rights by: (1) "[r]efusing to return her to the same or equivalent position;" (2) "[r]efusing to provide reasonable transitional measures necessary to return;" (3) [c]onditioning her return on exposure to unsafe conditions that caused her medical condition which precipitated her need for FMLA;" and (4) "[f]orcing her constructive discharge." (Amend. Compl. ¶¶ 64(a)–(d).)

The FMLA affords employees "a total of 12 workweeks of leave during any 12-month period" for "a serious health condition that makes the employee unable to perform the functions of the position." 29 U.S.C. § 2612(a)(1)(D). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" under the FMLA. 29 U.S.C. § 2615(a)(1). "An employer interferes with a right under the FMLA when it takes any action with a reasonable tendency to interfere with, restrain, or deny the exercise of or attempt to exercise an FMLA right . . . even where the action fails to actually prevent such exercise or attempt." Hines v. Blue Cross & Blue Shield of N.C., No. 1:19-cv-754, 2020 WL 3452155, at *3 (M.D.N.C. June 24, 2020) (internal quotations omitted) (quoting Gordon

v. U.S. Capitol Police, 778 F.3d 158, 165 (D.C. Cir. 2015)). To bring a successful interference claim under the FMLA, an employee must "demonstrate that (1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." Adams v. Anne Arundel Cnty. Pub. Schs., 789 F.3d 422, 427 (4th Cir. 2015).[3] On a motion to dismiss, however, "a plaintiff need only allege facts that permit the court to plausibly infer that her employer interfered with her FMLA rights." Hines, 2020 WL 3452155, at *3 (citing Snipes v. Sw. Va. Reg'l Jail Auth., 350 F. Supp. 3d 489, 494 (W.D. Va. 2018)).

Here, the Amended Complaint fails to plausibly state an interference claim under the FMLA. There is no dispute Plaintiff was entitled to—and received—an FMLA benefit when she took leave from work following her health concerns. However, Plaintiff has not plausibly alleged that UNCSA interfered with Plaintiff's ability to take FMLA leave, or that UNCSA engaged in conduct that amounts to interference under the FMLA. The extent of Plaintiff's interference allegations stem from UNCSA's alleged failure to accommodate Plaintiff's requests for a new workspace and limited physical duties upon her return from FMLA leave. Notably, however, "the FMLA does not require an employer to accommodate an employee's medical restrictions upon a return to work[.]" Ensor v. Jenkins, No. CV ELH-20-1266, 2022 WL 703920, at *22 (D. Md. Mar. 8, 2022) (citation omitted). Moreover, "FMLA leave does not provide an employee any greater rights than he or she would have had without taking

[3] See also Hansley v. DeJoy, No. 23-1426, 2024 WL 4947275, at *2 (4th Cir. Dec. 3, 2024) (noting that pursuant to the Supreme Court's decision in Muldrow v. City of St. Louis, Missouri, 601 U.S. 346 (2024), the extent of harm required differs between underlying claims and retaliation claims; a "retaliatory action is 'materially adverse,' meaning that it causes 'significant' harm," Muldrow, 601 U.S. at 357, which requires a heightened showing of harm, compared to an act affecting the terms or conditions of employment for an underlying Title VII disparate treatment claim, since "Muldrow refused to 'import' retaliation's 'significant-harm requirement' into disparate-treatment cases.").

leave." Mercer v. Arc of Prince Georges Cnty., Inc., 532 F. App'x 392, 396 (4th Cir. 2013); accord 29 U.S.C. § 2614(a)(3)(B) ("[N]othing in this section shall be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.").

There are no facts alleged in the Amended Complaint to suggest that UNCSA interfered with a protection afforded to Plaintiff under the FMLA, outside of Plaintiff's belief that she felt unable to return to work because UNCSA would not accommodate her requests before she returned from FMLA leave. Plaintiff contends that her FMLA protections were interfered with by and through UNCSA's unwillingness to provide Plaintiff with a safe workspace upon her return to work, which is alleged to be source of Plaintiff's need for FMLA leave to begin with. (Pl.'s Resp. at 9; Amend. Compl. ¶ 64(c).) However, as explained above, the FMLA does not entitle an employee to workplace accommodations following the use of FMLA leave, even if workplace conditions are said to be the reason the employee took FMLA leave to begin with. See Ensor, 2022 WL 703920, at *22 (citing Hibben v. Potteiger, No. 16-CV-111-JFJ, 2019 WL 189837, at *8 (N.D. Okla. Jan. 14, 2019)); see also Boone v. Bd. of Governors of Univ. of N.C., 858 F. App'x 622, 624 (4th Cir. 2021) (per curiam) ("'If the employee is unable to perform an essential function of the position because of a physical or mental condition,' however, 'the employee has no right to restoration to another position under the FMLA.'" (quoting 29 C.F.R. § 825.216(c))).

Although Plaintiff asserts that UNCSA "[r]efused to return her to the same or equivalent position" upon her return from FMLA leave, there are no facts alleged to support

that assertion. Instead, on the face of the Amended Complaint, the facts alleged clearly reflect that Plaintiff was given the option to be "restored to the position of employment held [by her] when the leave commenced," 29 U.S.C. § 2614(a)(1)(A), but she did not want to be restored to that position and instead sought accommodations. This is clear from the briefing as well, in that Plaintiff contends that Defendant refused to change her workspace, refused to accommodate lifting limitations, and refused to provide course and duty modifications, and that as a result she "could not safely return to work due to the same hazardous environment that had caused her medical conditions." (Pl. Br. [Doc. #13] at 3–4, 9, 10, 12). As noted in Plaintiff's brief, Plaintiff's "core allegation" is that "Defendant refused to implement the reasonable measures that would have allowed Plaintiff to return to the same job safely and without exposure to the very chemicals that triggered her FMLA leave," and Plaintiff contends that she could have returned to work but only with "basic safety measures and course management logistics that were clearly requested by Plaintiff." (Pl. Br. at 10.)

Notably, however, as discussed above, the FMLA explicitly provides that:

> Nothing in this section shall be construed to entitle any restored employee to–
> . . .
> (B) any right, benefit or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.

29 U.S.C. 2614(a)(3)(B); see also 29 C.F.R. § 825.216(c). Thus, the FMLA does not provide a basis for a claim for any benefit or accommodation, other than return to the position the employee left, which in this case would involve returning Plaintiff to her position, workspace, and duties that she had prior to taking leave. Any obligation to change the location or

conditions of Plaintiff's workspace or duties would not arise from the FMLA, and Plaintiff has not alleged any other federal statutory claim.[4]

Without more, Plaintiff's factual allegations regarding UNCSA's conduct do not give rise to a cognizable interference claim under the FMLA. Cf. Alexander v. Carolina Fire Control Inc., No. 1:14CV74, 2014 WL 3729546, at *3 (M.D.N.C. July 25, 2014) (Beaty, J.) (explaining that interference with FMLA rights "include[s] refusing to authorize FMLA leave, discouraging an employee from using such leave, avoiding responsibilities under FMLA, and using the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." (internal quotations and alterations omitted)); see also 29 C.F.R. § 825.220(b), (c) (further providing examples of FMLA interference).

Thus, the Amended Complaint does not plausibly allege that UNCSA interfered with a right afforded to Plaintiff under the FMLA.[5] Therefore, Plaintiff's interference claim under the FMLA should be dismissed for failure to state a claim upon which relief may be granted.

---

[4] To the extent the Amended Complaint could be construed to allege a failure to accommodate claim under the Americans with Disabilities Act ("ADA"), see 42 U.S.C. § 12112(b)(5)(A), Plaintiff makes clear that she "is not alleging an ADA accommodation claim." (Pl.'s Resp. at 10.)

Plaintiff also makes passing reference to OSHA but has not asserted any claim under OSHA or attempted to specify any alleged OSHA violation.

[5] To the extent Plaintiff contends UNCSA engaged in unlawful interference under the FMLA by denying her request for leave beyond the statutorily prescribed twelve-week period (Amend. Compl. ¶ 60), that contention quickly fails. See, e.g., Drumheller v. Cent. Va. Elec. Co-op, No. 3:06-CV-00010, 2006 WL 2403334, at *7 (W.D. Va. Aug. 18, 2006) (collecting cases to support the proposition that "once the twelve week period has expired, the time to claim entitlement to benefits under the FMLA cannot be enlarged or recaptured because no violation of the Act has occurred within the statutory benefit period."); Marsh v. GGB, LLC, 455 F. Supp. 3d 113, 122 (D.N.J. 2020) ("[A]n employer's decision not to grant extended, unprotected leave, is not an interference with FMLA rights; said differently, [an employer] cannot be found to interfere with [an employee's] attempts to use time he did not have."). Indeed, that statute is clear, entitling an employee to only "a total of 12 workweeks of leave during any 12-month period." 29 U.S.C. § 2612(a)(1). The facts alleged in the Complaint reflect that Plaintiff was given the full 12 weeks of leave, from August 17, 2023 to November 14, 2023. (Amend. Compl. ¶¶ 43–44.)

2. FMLA Retaliation Claim

Next, Plaintiff alleges retaliation under the FMLA. In her Amended Complaint, Plaintiff claims UNCSA "subjected Plaintiff to retaliation as a result of engaging in protected activity, including exercising rights and benefits under the FMLA and complaining about retaliation against her for engaging in federally protected activity." (Amend. Compl. ¶ 63.)

Under the FMLA, an employer cannot "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). The Fourth Circuit has found that this section protects not just employees who "oppose" unlawful practices, but also protects "employees from discrimination or retaliation for exercising their substantive rights under the FMLA." Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 546 (4th Cir. 2006). The applicable regulations further provide that the FMLA

> prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies.

29 C.F.R. § 825.220(c); see also Fry v. Rand Constr. Corp., 964 F.3d 239, 245 (4th Cir. 2020). The Fourth Circuit has explained that "FMLA claims arising under the retaliation theory are analogous to those derived under Title VII and so are analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green," such that a plaintiff must show that "'he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity.'" Yashenko, 446

F.3d at 50–51, 54 (quoting Cline v. Wal–Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998)); see also Adams, 789 F.3d at 429.

In this case, there is no dispute Plaintiff engaged in a protected activity under the FMLA by taking leave from work in light of her health concerns. However, the Parties disagree over whether Plaintiff has plausibly alleged that UNCSA took retaliatory action against her in violation of the FMLA. In her Amended Complaint, Plaintiff claims that UNCSA constructively discharged her by denying her request for accommodations that would have safely facilitated her return to work following her FMLA leave, thereby leaving "Plaintiff with no viable option but to separate from her employment" to protect her health and safety. (Amend. Compl. ¶¶ 51, 49.) In the briefing, Plaintiff similarly describes the retaliation as constructive discharge based on Defendant's failure to accommodate her request for "safety measures" to allow her to return to work. (Pl. Br. at 12.)

However, as noted above, Plaintiff has failed to cite to any obligation Defendant had to accommodate her requests. Plaintiff does not contend that employees who did not take FMLA leave were accommodated, nor has Plaintiff alleged that she was denied an accommodation that she would have been given if she had not taken FMLA leave. Indeed, the Complaint alleges that prior to taking leave, she was required to work in the space with chemicals, and with the same lifting requirements and course duties, and following her FMLA leave she had the opportunity to return to the same position with the same location and duties. Under the facts alleged, no additional action was taken against her, and no benefit was withheld, as a result of her taking the FMLA leave. Plaintiff maintains that UNCSA's refusal "to engage in any meaningful dialogue" with respect to her requests to return to work with

additional safety measures "allow an inference of retaliatory motive and show clear adverse action." (Pl.'s Resp. at 12.) However, there are no facts provided in the Amended Complaint to plausibly suggest that UNCSA retaliated against her by deliberately refusing to accommodate her requests in order to force her to resign because she took FMLA leave. Plaintiff essentially asks the Court to read an accommodation requirement into the FMLA, such that any failure by an employer to accommodate a light duty request or similar job modification request from an employee after taking FMLA leave could then be charged as an FMLA retaliation. As discussed above, however, the FMLA does not include such a requirement, and in fact explicitly provides that under the FMLA an employee is not entitled to any right, benefit, or position other than what they would have been entitled to had they not taken leave. 29 U.S.C. 2614(a)(3)(B); see also 29 C.F.R. § 825.216(c).

Thus, Plaintiff has not plausibly alleged that UNCSA took retaliatory action against her because of her use of protected FMLA leave. Therefore, Plaintiff's FMLA retaliation claim should be dismissed for failure to state a claim upon which relief may be granted.

C. Remaining State Claims

In her Amended Complaint, Plaintiff also brings three state claims against UNCSA under North Carolina law: (1) wrongful discharge in violation of public policy; (2) breach of contract; and (3) negligent infliction of emotional distress. However, given the determination that Plaintiff has failed to plausibly state a claim under the FMLA, all federal law claims will be dismissed, and there is no reason for this Court to undertake analysis of the remaining state law claims, which raise multiple issues that are best resolved by the state courts. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim

. . . [if] the district court has dismissed all claims over which it has original jurisdiction"); see also Royal Canin U. S. A., Inc. v. Wullschleger, 604 U.S. 22, 32 (2025) ("[A]lthough supplemental jurisdiction persists, the district court need not exercise it: Instead, the court may (and indeed, ordinarily should) kick the case to state court."); accord Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351, 357 (1988) (holding that, upon dismissal of all federal claims, "a district court has discretion to remand to state court a removed case involving pendent claims").

Thus, upon dismissal of the FMLA claims, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(c)(3). Given that this case was removed from state court, the case should be remanded back to state court for further consideration of the remaining state claims.[6]

III. CONCLUSION

IT IS THEREFORE RECOMMENDED that UNCSA's Motion to Dismiss [Doc. #11] be GRANTED as to Plaintiff's FMLA claims, and that the Court decline to exercise

[6] In the Motion to Dismiss, UNCSA also raises Eleventh Amendment immunity and state sovereign immunity as to the state law claims. See McCants v. Nat'l Collegiate Athletic Ass'n, 251 F. Supp. 3d 952, 954–57 (M.D.N.C. 2017) (noting the differences between Eleventh Amendment immunity and state sovereign immunity, while also addressing the interplay between both immunities and federal jurisdiction). To the extent these assertions are directed only to the state law claims, the Court need not consider them further as the Court is declining to exercise jurisdiction over the state law claims. The Court notes, however, that "[t]he Supreme Court [has] held that voluntarily invoking a federal court's jurisdiction through removal is a 'clear' act sufficient to waive the state's immunity under the Eleventh Amendment." Id. at 958 (citing Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 620, 623–24 (2002)). Thus, any Eleventh Amendment immunity has been waived, and any sovereign immunity as to the state claims can be further considered by the state court on remand.

supplemental jurisdiction over the remaining state law claims, and that those state law claims be remanded to state court.

This, the 26th day of August 2026.

Joi Elizabeth Peake
United States Magistrate Judge